# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 18-41119

—————

United States Court of Appeals
Fifth Circuit

**FILED**
February 28, 2020

Lyle W. Cayce
Clerk

JEFF KITCHEN,

　　　　Plaintiff - Appellant

v.

BASF,

　　　　Defendant - Appellee

————————

Appeal from the United States District Court
for the Southern District of Texas

————————

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A discharged employee sued his former employer alleging discrimination under the Americans with Disabilities Act and the Age Discrimination in Employment Act. The district court granted the former employer's motion for summary judgment. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Jeff Kitchen began his employment with BASF in 2006. BASF is a chemical company based in Germany whose corporate name is the acronym formed from its earlier German-language name. It describes itself as a producer and marketer of chemicals and related products. While a BASF

No. 18-41119

employee, Kitchen was twice convicted of driving while intoxicated ("DWI"). He also consumed alcohol during working hours, even though he knew it was a violation of company policy. On multiple occasions, BASF permitted him to take substantial leave to undergo inpatient and outpatient alcohol-abuse treatment.

In May 2014, while Kitchen was on leave, he was arrested for and convicted of DWI with a Blood Alcohol Content ("BAC") of 0.15 and convicted. Even though BASF was aware of Kitchen's alcohol abuse, BASF allowed him to return to work in October 2014 under special conditions. During his deposition testimony, Kitchen stated the conditions included not getting another DWI and staying sober at work. On October 6, Kitchen signed a Return to Work Agreement which required him, among other things, to submit to future breath alcohol testing. The agreement provided that failure to meet the stated requirements could result in termination. A separate Testing Agreement signed at the same time specifically provided that testing positive for alcohol could result in termination.

On October 24, 2014, Kitchen signed a Final Written Warning that any further violations of company policy, testing positive for alcohol at work, or a felony conviction of DWI could result in termination. At that time, BASF's operative policy regarding alcohol and substance abuse stated that post-rehabilitation testing would be conducted by the Site Human Resources Representative, and the Representative was to keep the BASF Employee Assistance Program case manager informed of the test results. Significantly, the policy did not define a minimum level of BAC for test results to be considered "positive." This policy superseded a policy from December 2012.

On September 28, 2015, Kitchen arrived at work at 7:30 a.m. At 10:40 a.m., Kitchen underwent a breath alcohol test that showed a BAC of 0.014. At 10:55 a.m., he underwent a second breath alcohol test that showed

No. 18-41119

a BAC of 0.010. The nurse who was acting as the breath alcohol technician and who administered the test was certified to administer breath alcohol tests using an Intoxylyzer 5000. The record does not clearly indicate what kind of breath alcohol testing machine was used for Kitchen's breath test. Based on these test results, Kitchen's supervisor, Mark Damron, believed Kitchen had arrived to work under the influence of alcohol. Damron believed these test results showed Kitchen was in violation of BASF's alcohol policy, the Return to Work Agreement, and the Final Written Warning. BASF discharged Kitchen effective October 2, 2015.

Kitchen filed his complaint against BASF on February 3, 2017, asserting claims under the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). The parties filed cross motions for summary judgment. Kitchen filed his response to BASF's motion for summary judgment on its due date with no attached exhibits or record evidence. BASF filed its reply in support of its motion for summary judgment the following day. After BASF filed its reply, and after Kitchen's deadline to file his response had passed, Kitchen filed a "corrected" response to BASF's motion for summary judgment with exhibits. The district court ordered the clerk to strike Kitchen's "corrected" response because it was untimely filed.

Ultimately, the district court granted summary judgment in favor of BASF, simultaneously denying Kitchen's motion for summary judgment. Kitchen appeals the district court's judgment dismissing his case.

In addition to challenging the judgment against him, Kitchen also challenges the district court's order striking his "corrected" response to BASF's motion for summary judgment and certain evidentiary rulings made by the district court.

3

No. 18-41119

DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Ibarra v. UPS*, 695 F.3d 354, 355 (5th Cir. 2012). Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When cross motions for summary judgment have been filed, "we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014).

## I.    ADA claim

The ADA prohibits employers from discriminating "on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). The ADA expressly provides that an employer can hold alcoholic employees to the same standards as other employees, even if the behavior in question is related to alcoholism. *See* § 12114(c)(4). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

Kitchen argues he has produced direct evidence of discrimination and therefore does not need to rely on the burden-shifting framework of *McDonnell Douglas*. To support this argument, he states BASF admits it discharged him because he failed a breath alcohol test, and this constitutes direct evidence he

4

was discharged because of a disability — alcoholism — in violation of the ADA. Alternatively, he argues BASF did not adhere to its policy in discharging him and he was not technically "impaired" or "intoxicated."

We have held in an ADA-termination case that evidence is direct when, if believed, it proves the fact of "discriminatory animus without inference or presumption." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). Kitchen's evidence at most would show that BASF discharged him based on the results of his alcohol test, which undeniably were above zero, or that BASF misapplied its policy or was mistaken in Kitchen's level of intoxication while he was at work. Firing Kitchen for arriving to work under the influence of alcohol is not equivalent to firing Kitchen because of a prejudice against alcoholics. An inferential leap is required to arrive at the conclusion BASF discharged Kitchen out of discriminatory animus against him as an alcoholic. Thus, Kitchen has not produced direct evidence to support his case.

Kitchen also makes a burden-shifting argument. The first step requires Kitchen to establish "(1) he had a disability, (2) he was qualified for the job, and (3) there was a causal connection between an adverse employment action and his disability." *Rodriguez*, 820 F.3d at 765. If Kitchen is successful in establishing all three requirements, a presumption of discrimination arises, and the burden shifts to BASF to articulate a legitimate, non-discriminatory reason for the termination. *See Caldwell v. KHOU-TV*, 850 F.3d 237, 241–42 (5th Cir. 2017). If BASF does so, the burden then shifts back to Kitchen to show BASF's reason was pretextual; Kitchen could do that through evidence of disparate treatment or by showing BASF's explanation was false or unbelievable. *Id.* at 242.

We need not discuss each step in the shifting evidentiary presentation because Kitchen offered no evidence of a causal connection between his

discharge and his alcoholism. Kitchen was discharged for failing a breath alcohol test. He argues that means he effectively was discharged because of his alcoholism. He presented no evidence, though, that his discharge was based on any discriminatory animus against him as an alcoholic. The evidence shows BASF had a post-rehabilitation alcohol testing policy and Kitchen had signed a Final Written Warning informing him that testing positive for alcohol while at work could result in his termination. Kitchen's supervisor, Damron, believed Kitchen had arrived to work under the influence of alcohol, meaning Kitchen violated company policy and the Final Written Warning. The ADA states that covered entities "may require that employees shall not be under the influence of alcohol . . . at the workplace" and that they "may hold an employee . . . who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee." 42 U.S.C. § 12114(c)(2), (4). Kitchen has not offered evidence to support a causal connection between alcoholism and his discharge. He thus fails to establish a *prima facie* case of discrimination under the ADA.

Further, Kitchen has failed to show BASF's legitimate, non-discriminatory reason for discharging him, the apparent positive results of his alcohol test and violation of company policy, was pretextual. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53–54 (2003). The focus of the pretext inquiry is not whether the alcohol test was accurate but whether BASF reasonably believed its non-discriminatory reason for discharging Kitchen and then acted on that basis. *See Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993). In *Waggoner*, we stated, "the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." *Id.* Kitchen, who does not dispute his BAC test results were above zero, focuses his arguments on the

accuracy of the test, the credentials of the technician who administered the test, and whether he in fact did violate BASF company policy. The argument fails because Kitchen provided no evidence BASF did not reasonably believe its non-discriminatory reason for discharging him.

Kitchen also argues that BASF violated the ADA by failing to make reasonable accommodations. Kitchen did not make this allegation in his complaint, in his motion for summary judgment, or in his response to BASF's motion for summary judgment. Because Kitchen did not present this argument to the district court, and he makes no attempt to demonstrate extraordinary circumstances for why we should consider it, this argument is waived. *See Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 759 (5th Cir. 2019).

Even if we considered Kitchen's failure-to-accommodate argument, it would fail. The ADA prohibits covered entities like BASF from discrimination by failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Nevertheless, the ADA does not provide a right to an employee's preferred accommodation but only to a reasonable accommodation. *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009).

Kitchen argues he had requested a blood alcohol test to be conducted after the breath tests showed a BAC of 0.014 and 0.010, which are levels that would not show legal intoxication. He claims by refusing to provide him with this additional test, BASF violated the ADA by failing to accommodate him. BASF had done more than necessary to accommodate him in a reasonable manner by allowing him several leaves for treatment, even after he had been convicted of DWIs and violated company policy by consuming alcohol while at

work. Not conducting an additional alcohol test is not evidence that BASF failed to reasonably accommodate him.

For these reasons, his ADA claim was properly dismissed.

## II.    *ADEA claim*

Kitchen concedes he "could not substantiate [his] claims for discrimination on the basis of age." His argument consists of asserting he was unable to produce any evidence in support of his ADEA claim because BASF objected to his discovery request for all documents related to all employees and terminations at BASF's Freeport location reaching back to 2010 and the district court "did not mandate that [BASF] produce such information."

"We review the discovery decisions of a District Court for abuse of discretion, including a decision, as here, to forego additional discovery and rule on a summary judgment motion." *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008). Kitchen produces no evidence to support his ADEA claim, and there was no abuse of discretion in the district court's decision to not mandate the requested production.

## III.    *Striking response*

Kitchen challenges the district court's order striking his late-filed "corrected" response to BASF's motion for summary judgment. The Federal Rules allow district courts, for good cause, to extend time with or without motion if the court acts before the original time or its extension expires, or on motion made after time has expired if there was excusable neglect. FED. R. CIV. P. 6(b)(1). Kitchen made no request to extend the time to file his response before the deadline, and he did not file a motion for an extension arguing excusable neglect. Even if Kitchen had filed such a motion, it was no abuse of the district court's discretion to strike his late-filed motion. We have held a

district court has discretion to refuse to accept a party's dilatory response to a motion for summary judgment, even if the court acknowledges reading the response, and has discretion to deny extending the deadline when no excusable neglect is shown. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006).

## IV.   *Evidentiary rulings*

We review evidentiary decisions for abuse of discretion, subject to harmless error review. *United States v. McCann*, 613 F.3d 486, 500 (5th Cir. 2010). Kitchen argues the district court abused its discretion in relying on Damron's testimony that Kitchen had arrived to work under the influence of alcohol. Kitchen argues because Damron consulted with a doctor regarding the alcohol test results, and because Damron's testimony is not based on Damron's personal knowledge as an expert, his testimony is hearsay and should not be considered at summary judgment. It is true BASF's motion for summary judgment cited to BASF's in-house physician's calculations, in which the physician concluded Kitchen had likely been under the influence of alcohol at work based on Kitchen's positive alcohol test, and the physician communicated this conclusion to Damron. The district court, though, did not rely directly on the physician's testimony or calculations when granting summary judgment to BASF. Instead, it relied on Damron's own testimony that he personally believed Kitchen had violated BASF policy and Kitchen had been under the influence of alcohol while at work, which is not an ADA-prohibited reason for discharging an employee. Damron's testimony incorporating the physician's opinion was not hearsay because it was not offered for the truth of whether Kitchen was intoxicated, but rather for the effect the physician's opinion had on Damron, namely the formation of his honest belief Kitchen had been intoxicated while at work. *See Chevron Oronite*

No. 18-41119

*Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, --- F.3d ----, No. 19-30088, 2020 WL 773287, at *6 (5th Cir. Feb. 18, 2020). Because Damron's testimony was not hearsay, and because Kitchen has offered no evidence to suggest Damron's testimony was not trustworthy, the district court did not abuse its discretion in relying on it.

Kitchen also argues medical records included as exhibits in BASF's motion for summary judgment should not have been admitted. These medical records show on September 29, 2015, the day after Kitchen's at-work BAC test results of 0.014 and 0.010, Kitchen reported to a physician that Kitchen had been having a recent alcohol binge and drinking heavily for the previous ten days. Though it is not entirely clear, it appears Kitchen argues these documents are inadmissible as hearsay and the hearsay exceptions found in Federal Rules of Evidence 803(4) and 803(7) do not apply. Contrary to Kitchen's argument, it was not an abuse of discretion to admit these medical records. Under Rule 803(4), statements made for medical diagnosis or treatment that describe medical history, past or present symptoms or sensations, their inception, or their general cause are not excluded as hearsay. FED. R. EVID. 803(4). The medical records in question fall squarely into this exception. Rule 803(7) involves the admissibility of the absence of a record of a regularly conducted activity. Though it is not clear how Rule 803(7) applies, to the extent Kitchen argues the records should have been excluded because they indicate a lack of trustworthiness under Rule 803(6)(E), it was not an abuse of discretion to admit what appear to be routine medical records. Even if there had been an abuse, the error was harmless because the district court did not rely on these records in dismissing Kitchen's claims.

AFFIRMED.

10