# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 1, 2022

Lyle W. Cayce
Clerk

No. 21-30449

Dorothy Gail Collett,

*Plaintiff—Appellant*,

*versus*

Weyerhaeuser Company; Thornhill Forestry Service, Incorporated; Lafayette Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 19-CV-11144

Before Jolly, Smith, and Engelhardt, *Circuit Judges*.

Per Curiam:*

In April 2019, Plaintiff-Appellant Dorothy Gail Collett sued Defendants-Appellees Weyerhaeuser Company, Thornhill Forestry Service, Inc., and Lafayette Insurance Company based on the provisions of Louisiana Civil Code articles 667 and 2315. Collett seeks monetary damages for physical

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30449

injury and mental distress that she allegedly sustained as a result of Thornhill's application of a herbicide, on July 6–7, 2018, to the commercial forest land, owned by Weyerhaeuser, located across the highway from her rural Washington Parish residence. After excluding Collett's proffered expert medical testimony regarding causation, the district court granted summary judgment in Defendants-Appellees' favor, dismissing Collett's claims with prejudice. We AFFIRM.

I.

The herbicide applied by Thornhill on the afternoon of July 6, 2018, and the morning hours of July 7, 2018, was Arsenal Applicators Concentrate ("Arsenal AC"). Used to control unwanted brush, the chemical was sprayed by large vehicles, referred to as "skidders." Because she has been highly sensitive to chemicals, including herbicides, since being exposed to high levels of formaldehyde in the 1980s, Collett attempts to distance herself from chemicals as much as possible. Having had no advance notice of the spraying, however, Collett was in an outbuilding located on her property when her husband, Gary Collett, first became aware of the skidders' presence, during the afternoon of July 6, 2018, on the Weyerhaeuser property.

According to Gary and the Colletts' son, Joshua, mist from one of the skidders extended beyond the tree line, in the direction of the highway and the Colletts' property, as the vehicle turned around before reaching the outer boundaries of the Weyerhaeuser woods. Once Gary told her about the spraying, Collett immediately rushed inside her house. Although she does not recall noticing any unusual smells that afternoon, both Gary and Joshua noted a chemical smell outdoors. When the spraying operations did not cease, despite requests by Gary and a neighbor, Collett "sealed" herself in her bedroom for the night, utilizing an air purifier and self-administering "histamine serotonin injection[s]" and oxygen. Reportedly, her heart was racing and she had nightmares during the night.

The next morning, July 7, 2018, the Thornhill skidders could be heard (across the highway) at 6:30 a.m. Noticing a chemical smell when she first exited her bedroom that morning, at 9:00 or 10:00 a.m., Collett covered her face with a washcloth and ran outside to an awaiting car. She stayed in a camper located on her parents' property for five weeks before returning home.

On Monday, July 16, 2018, Collett had an appointment with her family doctor, Mark James, M.D., at his office in Folsom, Louisiana. Dr. James was aware of Ms. Collett's extreme sensitivity to chemicals, having treated her and her family for a long time. Dr. James noted objective symptoms of wheezing, a red throat, hoarseness, and sores in her nose, in addition to her subjective complaints of respiratory distress. His office notes reflect a diagnosis of "acute chemical bronchitis," based on Collett's reporting that her symptoms appeared immediately after the Thornhill spraying.

## II.

Collett contends Weyerhaeuser's and Thornhill's acts and omissions, relative to the July 2018 spraying, violate various statutes and regulations and constitute negligence and gross negligence. That negligence, she maintains, resulted in her exposure to Arsenal AC, which, in turn, caused her to suffer multiple devastating illnesses requiring medical treatment. Alleging that she has suffered and continues to suffer severe physical injury, mental anguish, and financial loss, Collett has sought monetary damages, a permanent injunction prohibiting the spraying of chemicals within a two-mile radius of her property, and attorney's fees and costs, pursuant to Louisiana Civil Code articles 667 and 2315.

The district court initially denied the parties' summary judgment motions. Thereafter, however, the district court, considering a motion filed by Weyerhaeuser, issued an order precluding Collett's proffered medical

experts, including her treating physician, from providing expert testimony regarding causation. Following those evidentiary rulings, the district court considered additional requests for summary judgment from the parties. Denying Collett's motion for partial summary judgment, the district court granted the defendants' motions and dismissed Collett's claims with prejudice. This appeal followed.

## III.

We review the district court's evidentiary decisions, including the "gatekeeping" determinations required by Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 589 (1993), for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020); *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kitchen*, 952 F.3d at 252. "Courts do not disfavor summary judgment, but, rather, look upon it as an important process through which parties can obtain a 'just, speedy and inexpensive determination of every action.'" *Goldring v. United States*, 15 F.4th 639, 644 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). A party asserting that there is a genuine dispute as to any material fact must support its assertion by citing to particular parts of materials in the record. *See* FED. R. CIV. P. 56(c)(1)(A).

## IV.

On appeal, Collett contests the district court's exclusion of expert testimony from her treating physician, Mark James, M.D., a family practice

doctor, regarding a causal connection between her claimed physical injury and exposure to Arsenal AC. Collett also challenges the district court's summary judgment rulings in the defendants' favor, arguing that, even without expert medical testimony, she has provided sufficient evidentiary and legal support, under Louisiana law, for her claims of negligent infliction of emotional distress. Having carefully considered the parties' briefs, applicable law, and the record in this matter, particularly including the district court's well-reasoned twelve-page January 8, 2021 Order and Reasons, seventeen-page May 6, 2021 Order and Reasons, and fifteen-page June 23, 2021 Order and Reasons, we find no reversible error in the district court's rulings.

As noted by the district court, expert testimony is necessary to prove causation in negligence cases where a plaintiff claims to have suffered physical personal injuries as a result of chemical exposure. *See, e.g.*, *Million v. Exxon Mobil Corp./Exxon Chem. Co.*, No. 17-00060, 2019 WL 6617400, at *2 (M.D. La. Dec. 5, 2019), *aff'd sub nom. Million v. Exxon Mobil Corp.*, 837 F. App'x 263 (5th Cir. 2020)(unpub.); *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) (unpub.); *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996); *Talbot v. Elec. Ins. Co.*, No. 17-299, 2018 WL 6274314, at *2 (M.D. La. Nov. 30, 2018)(citing *Johnson v. E. I. DuPont de Nemours & Co.*, 7 So.3d 734, 740 (La. App. 5 Cir. 2009)). However, after considering the parties' submissions and hearing oral argument, the district court precluded Collett from eliciting *expert* testimony from Dr. James to establish the necessary causal connection between her physical ailments and her alleged exposure to Arsenal AC. On the other hand, the district court indicated that Dr. James would be allowed to testify as a *fact* witness regarding "the nature of [Collett's] complaints, the treatment he has administered, and any charges he has made for his treatment." These rulings were based on the district court's determination that the proffered expert

testimony did not satisfy the relevance and reliability requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 589 (1993).

In all, Collett has failed to show that the district court's performance of its "gatekeeping" role, relative to Collett's proposed introduction of expert testimony from Dr. James regarding causation, reflects an abuse of discretion. Though we have no reason to doubt Dr. James' qualifications and proficiency within the realm of family medicine, we find no flaw in the learned district judge's assessment that a different sort of expertise is necessary in the context of this particular matter.

Construing the remaining evidence in Collett's favor, as Rule 56 requires, and thus assuming the sincerity of Collett's claimed distress, we nevertheless also agree with the district court's summary judgment rulings. Notably, Collett's claims assert *negligent*, not *intentional*, infliction of emotional distress. And, as Collett acknowledges, Louisiana law provides a legal remedy for such negligence claims, in the absence of accompanying physical consequence to person or property, in only a limited number of circumstances. *See, e.g., Moresi v. State*, 567 So. 2d 1081, 1096 (La. 1990); *Covington v. Howard,* 146 So. 3d 933, 937 (La. App. 2 Cir. 2014), *writ denied*, 160 So. 3d 973 (La. 2014); *Dumas v. Angus Chem. Co.*, 728 So. 2d 441, 445 (La. App. 2 Cir. 1999), *writ denied*, 741 So. 2d 19 (La. 1999); *Crockett v. Cardona,* 713 So. 2d 802 (La. App. 4 Cir. 1998); *see also Nesom v. Tri Hawk Int'l*, 985 F.2d 208, 210 (5th Cir. 1993); 12 William E. Crawford, La. Civ. L. Treatise, Tort Law § 28:1, *et seq.* (2d ed.); 1 Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5.10 (2021). On the instant record, we agree that none of those special circumstances are implicated here.

No. 21-30449

## V.

For the reasons stated herein, the judgment of the district court dismissing Collett's claims under Louisiana Civil Code articles 667 and 2315 with prejudice is AFFIRMED.